## Case No. 111.

### AIKEN v. EDRINGTON et al.

[15 N. B. R. 271.]

Circuit Court, S. D. Mississippi. Nov., 1876.

BANKRUPTCY — RIGHTS OF STRANGERS — EQUAL EQUITIES — ASSIGNEE AS AGENT FOR CREDITORS. — PLEADING.

[1. E., Sr., desiring to screen his property from creditors, advanced money to pay off certain mortgages, the mortgagee, by procurement of E., Sr., transferred the mortgage debts and security to E., Jr., who was adjudicated a bankrupt on the petition of his creditors, and the assignee in bankruptcy foreclosed the mortgages and received the proceeds. Complainant, an assignee of a judgment creditor of E., Sr., claimed such proceeds as the property of E., Sr. Held, that the bill was not demurrable in failing to allege that complainant was the owner of his demand at the time of the fraudulent transfer, he being entitled to all the rights of his assignor in the premises.]

[2. In such case the creditors of E., Jr., could not be affected by any secret trust on his part for the benefit of E., Sr.; and their equities with respect to the fund in the hands of the assignee being equal to those of the creditors of E., Sr., and the mere fact that such fund was in the hands of the assignee amounting to an appropriation thereof to the use of the creditors of the bankrupt, E., Jr., they could not be compelled to surrender the same in favor of complainant.]

[3. An assignee in bankruptcy, in all else than in setting aside property exempt to the

bankrupt, is the agent of the law for the benefit of creditors; and a fund in his hands realized from the assignment is to be deemed appropriated to the use of the creditors, as between such creditors and others having equal equities with respect to such fund, before it passed to the assignee.]

In bankruptcy.

A. H. Handy, for complainant.

Cotchings & Ingersoll and Pittman & Pittman, contra.

HILL, District Judge. This is a bill filed by complainant against said Edrington, Sr., and O'Reilly, assignee in bankruptcy of Steele & Edrington, and who is also assignee of said William H. Edrington, Jr., to subject to the satisfaction of a judgment at law obtained by complainant against W. H. Edrington, Sr., a fund now in the hands of said O'Reilly as assignee of said W. H. Edrington, Jr., and which it is alleged is the money of said Edrington, Sr., and as to the complainant subject to the payment of his judgment. The questions now submitted for consideration arise upon the demurrer of O'Reilly to the bill, and amended bill of complainant.

The first ground of demurrer insisted upon in argument is that the bill upon its face shows that if complainant had any rights, they accrued more than two years before filing his bill, and that his remedy is barred by the limitation of two years provided in the bankrupt law, and that neither the original bill nor amended bill avers sufficient facts in avoidance of the bar. This ground of demurrer is well taken as to the original bill. If, however, the grounds stated in avoidance of the bar applied to O'Reilly, as concealing the alleged fraud between Edrington, Sr., and Edrington, Jr., the demurrer would not be on this point well taken. I am in doubt as to its application to O'Reilly, and therefore think it best to overrule the demurrer on this point, reserving to the defendant the right to set up the same defense in the answer, if an answer shall be required upon other grounds of demurrer being overruled. Another ground of demurrer insisted upon is that complainant does not show by his bill that he was a creditor of W. H. Edrington, Sr., when the fraudulent disposition of his funds was made, and out of which the equitable claim insisted upon is alleged. To entitle the complainant to the relief asked, it is necessary to allege and prove that the demand under which he claims was in existence when the alleged fraud was committed. The bill does not allege that complainant was the owner of the demands when the fraud was committed, and if it depended upon his being the owner of the demands at that time, the demurrer on this point would be well taken, but it is alleged that he is the assignee of these demands and that they did then exist. I am inclined to the opinion that the assignee of the demands is entitled to the same rights that the assignor would have been had the assignment not been made, and on demurrer hold this objection not well taken. The main ground relied upon is that the bill does not allege such facts as will entitle the complainant to any equitable relief.

The substance of the allegations and charges made in the bill as grounds for the relief sought are, that Edrington, Sr., was the owner of a considerable sum of money which he wished to conceal from his creditors, and especially those whose debts were afterwards assigned to complainant, and, with a view of defrauding them, made an arrangement with Holt and Mrs. Shipp to pay off two mortgages executed the one by Holt and wife, and the other by Mrs. Shipp, to secure certain indebtedness of said bargains respectively to one E. Peal, their commission merchant in New Orleans, and for the foreclosure of which bills were then pending in the chancery court of Adams county. These mortgages conveyed the interest of the bargains in a large tract of land in Issaquena county, as a security for the satisfaction of the mortgage debts. By the arrangement the notes of the parties were executed for the money advanced to Peal, who transferred the mortgage debt and security to W. H. Edrington, Jr., to whom the notes were made payable. The suits for the foreclosure were prosecuted to final decrees, and the land directed to be sold to pay the mortgage debts, or, as between Edrington and the parties, the notes so executed to Edrington, Jr. These notes not having been paid, and Edrington, Jr., having been adjudicated a bankrupt upon the petition of the creditors of Steele & Edrington, which included the individual estate of Edrington, Jr., the interest in the suits for foreclosure of the mortgages having been assigned to Edrington, Jr., proceedings were taken by O'Reilly, assignee in bankruptcy of Edrington, Jr., to enforce the payment of these decrees, as the assets of said Edrington, which resulted in a sale of the lands by the decree of the district court for this district, and that O'Reilly, the assignee, now holds the proceeds in the shape of notes given for the purchase-money. The claim set up by complainant to this fund is, first, that the money was the money of Edrington, Sr., that the whole transaction was a fraudulent contrivance to prevent it from being subjected to the payment of his debts; secondly, that Edrington, Jr., was only the trustee of Edrington. Sr., and that the title to the money realized did not pass to O'Reilly, assignee. It is insisted by O'Reilly's counsel, that, conceding the equity of complainant as to Edrington, Jr., if no bankruptcy had intervened, the equities of the creditors of Edrington, Jr., are equal to those of Edrington. Sr.; that this fund is the result of a litigation commenced by the creditors of Edrington, Jr., and prosecuted by his assignee for the use of his creditors; and

that, their equities being equal to those of complainant, they being first in time cannot be required to give up the fruits of their negligence, [diligence.] Upon the other hand, it is insisted by complainant's counsel that O'Reilly is a mere stakeholder as to this fund, and that he cannot set up any right against complainant that could not have been set up by Edrington, Jr. I am satisfied that if this were a bill against Edrington, Jr., the allegations made in the bill, if not denied and if established by the proof, would entitle the complainant to the relief prayed for. But the assignment having been made to and in the name of Edrington, Jr., his creditors had a right to look to that as a fund for payment of the debts contracted by said Edrington, as much as did the creditors of his father to look to his estate for the payment of their debts. The appropriation of the money so fraudulently made, as alleged, was, if a trust, a secret one and not obligatory upon the creditors of Edrington, Jr., who were ignorant of it. It being fraudulent as charged, Edrington, Sr., was estopped from claiming. I am very much inclined to the opinion that the equities of the creditors of the Edringtons to this fund are at least equal, if those of the son are not superior. But, considering them as equal, the question arises as to the present status of the fund. Have the proceedings had resulted in an appropriation of it to the creditors of Steele & Edrington, or the individual creditors of Edrington? If so they cannot be compelled to part with it to one whose rights are not superior.

The solution of the question presented depends very much upon the relation the assignee sustains to the bankrupt and to his creditors. The only relation he sustains to the bankrupt or office he performs for him is to set aside his exempt property; in all else he is the agent of the law for the benefit of the creditors; in other words, his duty is to collect the bankrupt estate for distribution among the creditors according to their respective rights and priorities. The assignment of the bankrupt's estate to him confers upon him, as a general rule, only such title to the estate legal or equitable as the bankrupt possessed. Whatever that title may be it is his duty to assert for the benefit of the creditors, and as the representative of the creditors he may, and it is his duty to, go further, and recover from the assignees of the bankrupt any property or other assets which the creditors themselves could have recovered, though the bankrupt himself might have been estopped from its recovery. The bankruptcy operates as an injunction against the creditors to proceed by the usual remedies against the bankrupt and his fraudulent assignees; so that this right in the assignee is indispensable to the ends of justice. When the creditor proves his debt it has all the effect of a judgment against the estate of the bankrupt, and

draws to it all the beneficial results of a judgment at law, a decree in chancery, for the satisfaction of his demand as far as the bankrupt estate will afford such satisfaction.

The assignee, for the purpose of obtaining this satisfaction, is required to pursue and take in possession the bankrupt's estate, of whatever kind or character it may consist, and to reduce it into money, and pay the same into court or to such persons as the court by its order may direct; in the performance of this duty he supplies the place of the sheriff or marshal. This being so, the property or funds, when received by him, is in effect an appropriation of the assets to the use of the creditors, as much so as if seized or sold by the sheriff or marshal; and if not recoverable from the sheriff or marshal, if held by them under legal process, cannot be recovered from the assignee. It follows that, if the premise is correct, that the equity to this fund in the creditors of the bankrupt is equal to that of complainant, the logical and legal result must be that they cannot be required to surrender it, although if complainant had first pursued and obtained possession of it, it could not have been taken from him. I have considered the rules of law stated, and so ably presented by the learned counsel of complainant, and at first was of opinion that the demurrer should be overruled, and the defendant required to answer; but having come to the conclusion that complainant has no superior equity to the fund over that of the creditors of the bankrupt, and the further conclusion that there has been an appropriation of the fund in their favor as against all claims not superior to that which they hold, I can see no other result than the defeat of complainant's claim to this fund. If correct in this it will save trouble and cost to sustain the demurrer and dismiss the bill and let the cause go to the supreme court on the question as decided. If the complainant sees proper to take this course the fund will be decreed to await the result. Therefore the decree will be that the demurrer be sustained and the bill dismissed.